James K. Levin arguing for the appellee Victoria E. Joseph. Good morning, are both parties ready to proceed? Yes, your honor. Mr. Levin, are you ready to proceed? You are muted, Mr. Levin. I'm muted. I apologize. I apologize, your honor, but I think I had it on mute and now it's not anymore. All right, Mr. Levin, you may proceed. Thank you. Your honor, may it please the court. In this case, the defendant was convicted of armed violence and unlawful possession of a weapon by a felon. He's seeking to vacate the conviction on armed violence and to vacate the conviction of a sentence of 12 years imprisonment. The defendant asked that the conviction be reversed outright on the grounds of insufficient evidence. Briefly, the officer in this case initiated a traffic stop. The defendant fled. A foot chase ensued. The officer apprehended the defendant and the officer recovered a switchblade knife from the waistband on the defendant's person. And then also recovered a bag of a white pottery substance, which later turned out to be cocaine. And that was found about six to 12 inches away from his right leg. The defendant on that time at that point time was on the ground and the officer was about to effectuate an arrest. So in this case, the defendant challenges the armed violence conviction. And the defendant argues that the under armed violence, a defendant may be convicted while he's armed with a dangerous weapon. And he commits any felony defined by Illinois law, with some exceptions. The question here is, was the defendant guilty of possession of cocaine? Because if he's not, the armed violence conviction must fall. The defendant argues that the evidence was insufficient because of several factors. There's no fingerprints found on the bag. There was no cocaine residue on the defendant. No witness, including the arresting officer, Kelly, and so a defendant handle or dispose of the bag. There are no incriminating statements from the defendant. One of the principles of law that the defendant relies on here is that the mere presence in the vicinity or access to the area in which contraband is found is insufficient to establish constructive possession. And that's what the state is relying on here, constructive possession. And under People v. Ray, the appellate court reversed the conviction where the contraband was located 18 inches away from the defendant and drugs, currency and a handgun were found. That's People v. Ray. The state says there is circumstantial evidence to convict in this case. I would cite the People v. Cunningham case, the 2004 Illinois Supreme Court decision. And the Cunningham courts distinguish between reasonable inferences and unreasonable inferences. A reasonable inference is one that the reviewing court must accept. So even if the it's a deferential standard of review, admittedly, if there's a reasonable inference, even if the court would not have adopted it, the court must accept it. However, if it's an unreasonable inference, the court must reject it. So one of the factors that the state relies on to show circumstantial evidence is a defendant's flight at the traffic stop. What the state says is the defendant was running away because he possessed cocaine and it reflects a consciousness of guilt on his part. But it also came out in the record that defendant do not possess a driver's license. So the reason why he ran is because of a consciousness of guilt that he didn't have a driver's license while driving. So the question here is, is there any evidence in the record to suggest that one inference is more likely than the other? So if in this case, there's really no evidence in the record to suggest that the that it was probable or more likely that the defendant had a consciousness of guilt on the that he possessed cocaine. There's just no evidence that that the cocaine possession is the reason why he ran rather than not having a license. So the state has to present their case beyond a reasonable doubt. And there's no no evidence that that inference is more probable or more likely than the inference that he ran because he didn't have a license. So therefore, the inference that he ran because of possession of cocaine is an unreasonable inference. And since we have an unreasonable inference, this court should reject that inference under Cunningham. The other point the state makes are the defendant's movements about the time when he was placed under arrest. But the arresting officer, Callahan, stated that he didn't see the defendant reaching for a bag of cocaine. He didn't see him touch the bag and he had trouble focusing and looking at his hands while he was on the ground. He was more focused on his hand at the defendant's waistband because that's where the weapon was. He's more concerned officers, more concerned about his personal safety than anything else. So therefore, he really didn't have a view towards whether or not. And he actually didn't say he was reaching for the bag of cocaine so that we cannot make an inference based on the officer's testimony. There's that it's probable or more likely that we can make an inference that he's reaching for the bag of cocaine. We can't make that inference based on the officer's testimony. So that's an unreasonable inference that he's reaching for the cocaine. And therefore, under Cunningham must be rejected. So in short, the state relies on circumstantial evidence. They rely on the flight. They rely on the reaching that the defendant supposedly did. Those are unreasonable inferences. There's also a lack of evidence that I already mentioned because that I already discussed. So the evidence is insufficient to convict under the Cunningham standard. Now, I also like to make mention of a case that I cited, People versus Jackson, 1961 case. And the state says that that case came before the United States Supreme Court Jackson versus Virginia adopted in Collins as to the standard of review for challenges to the sufficiency of evidence. So what they're saying is that case is no longer valid. However, to the best of my knowledge, I looked at this and I couldn't find it. The state hasn't found anything either. It hasn't been overruled by the only Supreme Court. And only the Illinois Supreme Court can overrule its own decisions. So it's still a valid precedent. In fact, under the case of Blumenthal versus Brewer, not 2016, Illinois Supreme Court decision, the Supreme Court held where the Supreme Court has declared the law on any point. It alone can overrule and modify its previous opinion. And the lower judicial tribunals are bound by such decision. And it is the duty of such lower tribunals to follow such decision in similar cases. So Jackson 1961 is still good law. And what that held is if there's only a probability that somebody possessed cocaine, then that's insufficient to support a conviction. So I would rely on that case. But I don't rely on that case alone. I do rely on Cunningham and I do rely on the post-Jackson versus Virginia cases as well. And I do rely on the Collins standard. I rely on the Collins standard and the other college standard cases and the Jackson 1961 case. So for all the foregoing reasons, I would ask that the conviction on the armed violence be reversed outright and the sentence on that conviction be vacated. Thank you very much. Thank you, counsel. Justice Hutchinson, do you have any questions? Yes, thank you, Justice Bridges. Mr. Levin, if we accepted your argument in this matter on the armed violence, what would we be left with here? We'd be left with the conviction for unlawful possession of a weapon by a felon. Because the other convictions besides that were vacated under the one act one crime rule or various other reasons or they were merged or they were merged. So based on the merger that the trial court did in this case, there's only two convictions left intact. The armed violence and the unlawful possession of a weapon by a felon. The unlawful possession of a weapon by a felon carried the four year sentence. The 12 years is the sentence on the armed violence conviction. And so the possession of cocaines were merged into the armed violence? Is that what you're saying? Yeah, based on the record, there's only two convictions, my understanding, that are left in this case. The armed violence, the unlawful possession of a weapon by a felon. There are no other convictions. OK, so looking at the evidence that we do have, including your clients. Representation that he did not know that a switchblade was an illegal weapon to be carried. What then is he running from? Is he running from a failure to have a license, a class, a misdemeanor, or is it more reasonable to believe he is running from a possible cocaine charge, which based upon his prior history, he would probably know is a felony. Well, your honor, I believe that the evidence in the record is insufficient to answer that question. That's why I argued there's reasonable doubt sufficient for a reversal here, because as your honor stated, the question is whether it's probable or likely that he was running because of the cocaine rather than the rather than not having a license. I don't think there's any evidence to show that he's probably running from the cocaine, because I think we have to start from the starting point here is that there's no evidence that he possessed cocaine. The state is trying to use flight to show that he possessed cane, but there's cocaine, but there's no other evidence that he possessed cane other than the flight. So I don't think there's I don't think any inference that he ran because the cocaine is reasonable, because I don't think the state has proven it's probable or likely that he ran because of the cocaine, because they didn't present any other evidence that he possessed the cocaine. And as far as his prior record, I don't know if that was submitted as a basis at the trial court level. I don't know if his prior record would be admissible on that question, because I don't think prior convictions or any of that sort was admitted in the trial. Please correct me if I'm wrong. So and there was no argument from the state in the lower court level that prior record is determinative on that. I just don't think there's any evidence in the record. It's kind of like putting the cart before the horse. I think there's no evidence in the record that it was probable or likely that he ran because of cocaine rather than not having a license. Well, there is a charge in the record, a charge that he was found guilty of possessing that switchblade as a felon, either while on parole or mandatory supervised release. Correct. Yeah, he did have a prior record. Yes, that's true. Yes. So that is it's before the court and it's before us. I mean, be that as it may. All right, let's go on to another area. He said the state presented no other evidence before his hands were put up or before he went to the ground because of the tase. I thought there was testimony that with his left hand, he was reaching for his belt or in the area of his belt. And the officer is aware that some weapons are kept in belts. And with his right hand, he was reaching down to the ground near his right foot. And the cocaine is found about six to 12 inches away from his right foot. Why shouldn't that evidence be considered as well? You never mentioned that. Let's put it that way. So why shouldn't we consider that evidence as some evidence that he did possess the cocaine and he did have exclusive control over that cocaine before he tossed it six to 12 inches away? Well, there's no direct evidence that he tossed the evidence six to 12 inches because the officer did not observe him actually do that. So the state needs to rely on circumstantial evidence here. And I recognize that circumstantial evidence is enough to convict a defendant. And the state could rely on that alone. But here, in order to make that inference, the state has to prove it's a reasonable inference. And they have to prove that it's the likely or probable inference to make in this case. And I don't think they sustain that burden. And I'd say that just based on the officer's testimony himself. The officer testified that he was really focused in on the belt because he was more concerned about his safety. And that seems very reasonable for him to put the officer to put his safety first at this point to apprehend and arrest the defendant and to focus in on the safety. So he wasn't really watching the right hand. He was really watching the left hand going towards the belt. And so and officers also testified that he did not see his hands. And I rely on record 97. I cited 129, 98, 100, 130. I just picked that off of my brief or even the state's brief. But so those would be the relevant pages. But I rely on the fact that he didn't he testified he didn't see his hands. And he also testified that he's focused on the belt. So I don't think the state can make an inference which is likely or more probable than not that he was reaching for the bag of cocaine. The officers did not testify to that fact. And I don't think that it's more likely than not, considering the officer's own testimony, that that inference is likely. So under Cunningham again, I would ask the court to reject an unreasonable inference. OK, but although you say he didn't see his hands, he did see and he was behind him, obviously. He did see a hand or his left hand going what he believed to be his belt. And he did see movement of his right hand down near his foot. So how can you say he didn't see both hands? Well, I think he testified that he had. And please correct me based on the record if I'm wrong. But from my notes here, he did not see his hands at one point in the transaction. And just because he sees a hand move. That's all we have from the officer. But that's what we say. So I am right hand move. That doesn't mean that the inference that state is trying to make that he's reaching for the cocaine, that that's a reasonable inference. Because here he is on the ground, a very stressful situation for everybody. Everybody's moving about. And just because he sees a hand moving a little bit does not mean it's reasonable to infer that he's reaching for cocaine. So the question is not just whether an inference can be drawn. The question is whether it's a reasonable inference. And here the officer's testimony is insufficient to establish that such an inference would be reasonable. OK. Thank you, counsel. And thank you, Justice Bridges. Thank you, Justice Hutchinson. Justice Zinov, do you have any questions? I do. Just following up on the questions Justice Hutchinson asked, why wouldn't it be a reasonable inference if we know that the officer did testify that the defendant had been seen reaching towards the leg? That the cocaine was found next to and within six inches of six to 12 inches of. I mean, why wouldn't that be a reasonable inference that the defendant had taken it from his sock area where many times it's known that drugs are kept and discarded it in the course of the, you know, being taken to the ground or just before he was taken to the ground by the police? I mean, that certainly we know is circumstantial evidence, but I'm not sure why this isn't a reasonable inference. Well, because I mean, I'm sorry. Well, I was just going to reiterate. I mean, no, it's not direct evidence, but it's circumstantial evidence. So what I'm failing to see is why it isn't a reasonable inference. That the defendant knew about it, exercised control, even actual control. I mean, you know, a defendant doesn't have to be touching contraband to exercise control. But I mean, we're talking about both. We can talk about both actual and constructive possession. But, but focusing again on the question I started with, why is this not a reasonable inference? Well, I agree on a few points. One is I think the state has to establish not only inference, but a reasonable inference. I think they have to establish that it's more likely, more probable than not that that inference is established. And in order for the court to find a reasonable inference, if the state, if the evidence is insufficient and lacking, then it would be an unreasonable inference that this court would be required to reject. And I base this on Callahan's own testimony. I base this on the evidence reviewed and alike favorable to the state as required under the Jackson standard. And the officer did testify. At one point, he wasn't able to see his hands. At another point, he was really more focused on the waistband and really didn't have a good view of the, of what was, what else was going on. And this seems entirely reasonable and logical. He isn't focused on the waistband because that's where the threat to his safety lie. And so it's reasonable. It's not reasonable to assume he's really focused in on the right hand, which was supposedly near the cocaine. He wasn't focused in on that. He was focused in on the belt, the belt he was wearing on his waist, the waistband. And the fact that his hand was moving doesn't mean, necessarily mean, that he actually saw him take his hand and move it towards the back. So it would be an unreasonable inference to, without any other evidence, because the record, the evidentiary record is very scant on this. All they have is a movement of the hand by the defendant on the ground. That's all they have. So that's not enough to establish a reasonable inference in my judgment. Okay. Counsel, what I'm hearing is and seeing, we also know that there was no one else there. So, so the, you know, there wasn't anyone else around. So they're probably, it is reasonable to infer that no one else threw it there. But I think what I'm hearing, honestly, is you're conflating reasonableness with direct or circumstantial evidence. So because there was no direct evidence doesn't mean there can't be a reasonable inference that can be drawn from circumstantial evidence. And so I think that was the point of my question. But let me go on to another question. Just a second here. Just one minute. Let me just check. You know, actually, I don't have anything more other than that, that hasn't already been covered. So that would be my only question. Thank you. Thank you, Justice Inhofe. Mr. Levin, I have just a couple of questions. They covered most of them. And you brought it up as well in your response to one of the questions. You know, the standard before us is the sufficiency of the evidence. And that is to be, or not the standard, but that's the argument made. And the standard is we view this in the light most favorable to the state. How then can we find, in this case here, that the officer's testimony that he observed the defendant reach for his waistband and ankle area before the baggie was found, that this is so improbable as to create a reasonable doubt? Well, one point, as I mentioned in my initial presentation, is I rely on the People v. Jackson v. 1961. And I know, Your Honor, just cited the Jackson v. continuous manner. Again, my point would be is that the state argues that Jackson is no longer good law. The 1961 case, I would argue that it is good law. So we have a difference of interpretation, the state and I, on what the law is. The state says it's no longer good law. And what I rely on, again, is that Blumenthal v. Brewer case, which cites the Price v. Bullitt-Morris case, and it's been repeated often, but only the Illinois Supreme Court can overrule its past decisions. So I would respectfully submit that the appellate court, as a lower court tribunal, is not at liberty to declare that Jackson is no longer good law, because only the Illinois Supreme Court can do that. So I do rely on that case, evidently, because under Jackson v. 1961, the mere probability that the defendant possessed cocaine is not enough to secure a conviction. In that case, Jackson's conviction was reversed based on insufficient evidence. So I do rely on it here. And then the second part of my answer, I would apply, go ahead and apply the Jackson v. Virginia standard Your Honor just cited, and state that I am relying directly on the officer's testimony. And I would submit that my argument is not just that there's no direct evidence. I acknowledge that the court can convict based on circumstantial evidence alone. But here, the circumstantial evidence is insufficient, based on the officer's own testimony, that he's focused on the waistband, not on anything else. And that's reasonable, because there's more concern about safety. And at one point in his testimony, he says he wasn't really looking at his hands. And he didn't see his hands, because he was on the ground. Let me ask you this counsel, because we know he didn't run because of the switchblade, because he said he didn't know it was illegal. And as Justice Hutchinson asked earlier, in his statement, he said he ran because he didn't have a driver's license. Isn't it reasonable, though, for the trier of fact in this case to have found that his running was consciousness of guilt for his possession of the cocaine that was found right near his ankle? I think in order to make that jump, that inferential jump, and call that inference reasonable, I think the state would have been required to present more evidence. And they did not. And it's just as likely or probable they ran because he didn't have a driver's license. I think that analysis that the state comes up with, that it's reasonable to assume he ran because of the cocaine, kind of puts the cart before the horse. Because it assumes in its analysis that he possessed the cocaine. And that hasn't been proven yet. I don't think you could assume he possessed the cocaine and then say that he ran because he possessed the cocaine. The state can't make that inferential jump and assume initially in the analysis that he possessed the cocaine. Therefore, I don't think the state is actually presenting any evidence that it's more likely than probable that he ran because of the cocaine rather than the driver's license. Thank you, Mr. Levin. I have no further questions. Justice Hutchinson, do you have any further questions? No, thank you. Justice Inhofe, do you have any further questions? No, I don't. Thank you, Ms. Levin. At the end of the Appellee's argument, you will have an opportunity for a rebuttal. At this time, Ms. Joseph, you may begin your argument. Thank you, Your Honor. May it please the court and counsel. Good morning. I'm Victoria Joseph for the people of the state of Illinois. Here, we're looking at the sufficiency of the evidence, which this court knows they review in the light most favorable to the people to determine if a rational trier of fact could find all of the elements beyond a reasonable doubt. Here, we do not have just mere possibilities and probabilities. The trier of fact, here the trial judge, made reasonable inferences from the totality of the circumstances that led to a rational decision by the trier of fact. We specifically point to the case of Egan, which was this court's decision as being most similarly on point to our current circumstances. In Egan, we had a defendant who was in a parking lot, walk away when called over by the police, behind a truck, paused there for three to eight seconds, flexed his ankles, transferred the weight to the balls of his feet, and walked away from the truck. The cocaine was then found on the rear of the trunk. This court found sufficient evidence of possession where the defendant did not respond to the officer's inquiries, where he walked to the precise area where the drugs were found and stood there, and had capability to control the drugs within arm's reach. The officer did not see the defendant personally touching the bag, but this court found that the circumstantial evidence supported a reasonable inference that he had the drugs on his person at the time the police made contact, then attempted to conceal them on the bumper. And that is essentially what the trial court found here. The court found that the defendant reached for his right leg and the bag, the court specifically found six inches, but the evidence showed it was six to 12 inches, so within a foot from his right foot, that he reached for the blade and drugs simultaneously. And combined with his actions of flight, the grabbing toward the ankle, and the finding the drugs within inches of his foot, the evidence made a reasonable inference that he possessed the cocaine. The trial court found that the defendant did not respond to the officer's inquiries, but this court found that the defendant did not respond to the officer's inquiries. Here are potential multiple offenses, but the most serious of those offenses was going to be for the possession of the drugs. His right, his left hand reached for the waistband, his right hand reached for the ankle. Officer Callahan was only three feet away from the defendant, so he could have a view of the entire body. Even if he's watching the left hand more closely, going for the right hand, his peripheral view would have had plenty of time to also see the movement toward the right ankle, and he did see it. We have him testifying, he did see it. So we have the suspicious sort of movements toward the leg by which the drugs were found. He stopped in the precise area they were found, no one else was in the area during the pursuit, and the drugs were within his arm's reach while he was huddled on the ground reaching for his foot. So this established the capability of control and the reasonable inference that he had the drugs on him when he first made contact with police and was trying to conceal or dispose of it before finally submitting to police. So based on the totality of the circumstances and all of the reasonable inferences therein, the people asked for the court to affirm, and we'll answer any questions that the court has for us. Thank you, Joseph. Justice Hutchinson, do you have any questions? No, I do not. Justice Bridges, thank you. Justice Inhofe, do you have any questions? Well, I do. Just one. We know that close proximity of this bag to the defendant doesn't establish constructive possession, does it? You talked about the close proximity. So what evidence do you believe was compelling beyond the proximity such that we should affirm here based on the… …that this movement is what takes it beyond a case like Tate's or I believe the other one he cited was Ray, where you're just in the presence of the drugs and sitting there. So we have both in Nally, which was where he was leaning toward the bar, leaving the gun. The officer never saw him touching the gun. And in that case, we did have a thunking noise, but unfortunately, a bag of cocaine wasn't probably going to make the same kind of noise. So it was looking at this series of suspicious furtive movements that took it away from just the presence. So we're combining all of that. The same thing in Egan, which was this court's case. And just this capability of it being so close within arm's reach that he had the capability of controlling it and, again, was making the movements here likely to try to conceal it or dispose of it before the officer found it on him. Okay. Thank you very much. I don't have any further questions. Thank you, Justice Mendoza. Counsel, the defendant's fingerprints weren't present on the bag, nor was there cocaine residue on him, nor did Officer Callahan see him discard the bag. Can you then, even in the light most favorable to the state, tell us how we have actual possession or constructive possession in this case, and not just the probability that he possessed it? Well, we have the constructive possession. Well, even as Justice Enough brought up, the fact that he was trying to conceal or throw it away, that is actually usually found under actual possession because you're exerting dominion or control in trying to get rid of it. But even without the touching, there's no court that has found that such touching is necessary. We're looking for the intent and capability to maintain control and dominion over these drugs. And basically, even in this situation where we have a public location, we needed to show that he did not abandon the item and no others obtained possession. So it's his attempt to maintain control over it by concealing it. So we do have the movements there. We have it within such close proximity that he was capable of maintaining control over it. So that is what we have here. And those are reasonable inferences, which both this court and other courts have found sufficient. Was there any testimony to other people in the area or any other reasonable explanation as to how he happened to be on the sidewalk near the defendant? There was not, Your Honor. Officer Callahan said that during the pursuit, he did not see any other people in the area. Obviously, when he was driving a vehicle and following the defendant, he was not in the area before the defendant reached the area there. So there was nobody else seen immediately. Therefore, obviously, we do not, there is no direct evidence as to how long it was there. But we are allowed to make the reasonable inferences that with nobody else being seen neither in the area, the fact that he stopped at the exact location that the drugs were found and that he was making the movements toward them and they were still within his arms reach when they were found are the reasonable inferences that allow this. Thank you, Ms. Joseph. I have no further questions. Thank you. Justice Hutchinson, do you have any further questions? No, thank you. Justice Zinoff, do you have any further questions? No, I don't. Thank you. Thank you. Mr. Levin, you have any rebuttal? Yes, I do, Your Honor. You may proceed. Thank you. Your Honor, the state doesn't challenge the defendant's proposition that the Jackson case 1961 has not been overruled and is still authoritative precedent. So I would ask that the court apply that decision in the case. The case stands for the proposition that a conviction was reversed because probability of possessing cocaine is not sufficient to establish beyond a reasonable doubt that he possessed the cocaine. Again, there are several factors here why even under the Jackson versus Virginia standard, the evidence is insufficient. No fingerprint, no residue, no statements, no witnesses other than Callahan. So we don't have any witnesses other than Callahan that testify as to what the defendant was doing when he was on the ground. The state acknowledges mere vicinity is not good enough to establish possession. The state mentioned in its presentation that Callahan saw in his peripheral vision and use the word peripheral, peripheral, peripheral, peripheral vision that there was reaching to the right ankle. Well, that's a very thin reed to establish proof beyond a reasonable doubt because, excuse me, we all know that the officer was not looking at that directly. He was focused on the waistband, in fact, had a hard time even seeing the defendant's hands in the first place. And just because the defendant happens to move his hand, what the officer is jumping to a conclusion, he's the one who's making the inference himself. It's not the trier fact making the inference, it's the officer who says that there was reaching going on. And that is not sufficient or reliable evidence to rest the verdict of guilty beyond a reasonable doubt. What the officer said is he had difficulty seeing and peripheral vision when there are no other witnesses and no physical evidence at all, nothing else. That's a thin reed to rest the verdict of guilty beyond a reasonable doubt. So I have nothing further, Your Honors. Thank you very much. Justice Hutchinson, do you have any questions? Yes, I do. Mr. Levine, he has, the officer has, he's standing behind the defendant at this point. He wants the defendant to put his hands up. And he has to revert to, in his mind, using the taser because he sees the left hand going toward a belt. And he believes there is a reasonable inference there is a weapon there based upon his prior experience. How can we not say that based upon that same prior experience, the right hand fidgeting or moving toward the right foot and finding cocaine six to 12 inches away is also not a reasonable inference? Because the officer was focused in on the waistband belt because he was concerned about his safety. And as the state acknowledged, the officer claimed that he was using his peripheral vision, not his direct vision. So there's no other witnesses to this. And he's just seeing something out of the corner of his eye. And really all that he sees out of his corner of his eye is some moving. But that's what the officer is doing is he's making the inference because he sees a movement. So he's making a claim that the state should be making that there's a reasonable inference of reaching. All he sees is a movement out of the corner of his eye. And only one witness that sees a little movement out of the corner of his eye. He's not really even focused in on it, but he himself is making the inference. He's testifying as the inference. It's not the prior fact making that inference. He's saying that there was reaching when all he saw is a little movement out of the corner of his eye. I don't think that's a very thin reed to establish proof beyond a reasonable doubt. Do you have any case or any other authority that indicates peripheral vision is less reliable than direct vision? I mean, that's where we're going here. And I am not aware of any. I'm sorry, Your Honor. Well, I think we just have to apply the regular standards that the court uses. The Jackson 9661 case where mere probability is not enough. So I rely on that case. And then I rely on the post Jackson versus Virginia cases where, you know, the the evidence is insufficient. It's lacking. So the basic principle is insufficient. We have no physical evidence, no witnesses other than one single witness. We have a witness that wasn't really looking directly at it. We have a witness that's using peripheral vision. We have a witness that, you know, saw a witness moving his hand. Of course, he's on the ground. He's fidgeting a little bit because he's a stressful situation. He's about to be arrested if he just moves his hand a little bit. The officer himself cannot make the reasonable inference of reaching. All he saw was a hand moving out of the corner of his eye. So each fact is each case is to be judged on its own facts. So I really don't think there would be a case that would ever address it one way or the other because it's really based on the, you know, totality of the circumstances. And here the state has no circumstances at all except a peripheral view of one officer in a stressful situation where he sees a left hand moving. That's not enough to establish a conviction based on proof beyond a reasonable doubt. OK, thank you, counsel. And thank you, Justice Bridges. I have no other questions. Thank you, Justice Hudson. Justice Zinoff, do you have any questions? Yes, one related question, Mr. Levin. You have urged us to apply Jackson, which apparently holds that probability is not enough to convict. But would you not agree that a court is entitled to use circumstantial evidence to go beyond probability and find the defendant guilty beyond a reasonable doubt? Yes, I would agree that the court can rely on circumstantial evidence. However, the court has to find that the inference that is being asked to be made, that it's probable or likely a reasonable inference. And you can't just say that it's a possible inference. You have to establish it's more likely than not that it's probable that you can make this inference. Yes, but we have no indication that a court here didn't find that by using circumstantial evidence and convicting the defendant here. There's no indication that the court didn't make a reasonable inference by using the circumstantial evidence. Well, my view on this is... I'm sorry. Well, I was just going to say that was related to the question I asked before, really, regarding reasonable inferences and conflating reasonable inference with circumstantial evidence. So I think we're probably going over the same points that I asked and you answered. Unless there's something different that you want to add, I think we have covered it. Well, I'm at the risk of repeating myself and I apologize if I am. So I'll try to answer that question once again if I can. And that is, I know it's not correct to conflate those two points. And I'm not trying to say my argument is not directed at direct evidence. I'm not saying there's no direct evidence. I acknowledge circumstantial evidence is enough to convict. But I think it's a thin reed to rest a conviction beyond a reasonable doubt based on a very momentary view from an officer's peripheral vision when no other officer saw it at all. And no physical evidence, nothing at all, no statements, nothing. And to say that a movement of the hand for the officer to the officer himself is making that inferential jump that there was reaching going on. He's on the ground and the hands are moving a little bit because the officer ordered him, you know, to get his hands in a safe position to be able to be arrested. And it's a stressful momentary situation. I think what happens in like one or two seconds with the officer's peripheral vision is an insufficient reed to go ahead and rely on a proof beyond a reasonable doubt. That's a pretty hard standard to overcome. And just saying that's probable under Jackson 61 is not good. Thank you. Okay. Thank you very much. No further questions. Thank you, Justice Zinoff. And I have no further questions at this time as well. Justice Hutchinson, do you have any further follow-up questions? No, thank you. Okay. The court at this time thanks both parties for your arguments this morning. The case will be taken under advisement and a disposition will be rendered in due course. Mr. Clerk, you may close the case and terminate the proceedings. Thank you.